# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PHYLLIS P. JAMES and NEW CASTLE FAMILY CARE, P.A., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: N16C-06-209 AML |
| v. | ) ) | |
| UNITED MEDICAL LLC, UNITED MEDICAL OF DE, LLC, UNITED MEDICAL OF PA, LLC, and UNITED MEDICAL CLINIC, LLC, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

Submitted: December 2, 2016
Decided: March 31, 2017

## MEMORANDUM OPINION

**Upon Defendants' Motion to Dismiss, Granted in part**

Leroy A. Tice, Esquire, of LEROY A. TICE, ESQUIRE, P.A., Wilmington, Delaware, and Perry F. Goldlust, of PERRY F. GOLDLUST, LLC, Wilmington, Delaware; Attorneys for Phyllis P. James and New Castle Family Care, P.A.

Jennifer C. Jauffret, Esquire and Travis S. Hunter, Esquire, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Attorneys for United Medical Clinic, LLC, United Medical, LLC, United Medical Clinic of DE, LLC, and United Medical Clinic of PA, LLC.

**J. LeGROW**

This action involves a related series of agreements between the plaintiffs, who are a primary care physician and her medical practice, and the defendants, who are an affiliated group of medical management companies. Under the agreements, the plaintiff physician agreed to work for the defendants, who also agreed to undertake collection efforts on her behalf for the accounts receivable for her old practice. A second agreement at issue, at least according to the plaintiffs, arises from a letter of intent in which the defendants agreed to pay $120,000 for the medical practice, particularly its good will and tangible property. The plaintiffs have asserted various breach of contract claims, along with alternative theories of recovery, arising from both the billing agreement and the letter of intent. The defendants have moved to dismiss the claims for a variety of reasons. The primary question presented is whether an integration clause in one of the parties' agreements unambiguously eliminated all other agreements between them, including the letter of intent that forms the basis for the plaintiffs' second breach of contract claim. I conclude the integration clause is ambiguous in its scope and therefore deny the defendants' motion on that, and most other, bases. My reasoning follows.

**FACTUAL BACKGROUND**

Except as otherwise noted, the following facts are drawn from the amended complaint and the documents it incorporates by reference, drawing all reasonable

1

inferences in favor of the plaintiffs. At all relevant times, United Medical Clinic, LLC ("United Medical Clinic"), United Medical, LLC ("United Medical"), United Medical Clinic of DE, LLC (the "Clinic of DE"), and United Medical Clinic of PA, LLC (the "Clinic of PA," and collectively with United Medical Clinic, United Medical, and the Clinic of DE, "Defendants") operated healthcare and billing services providers in Delaware and Pennsylvania. Kemal Erkan was the president of United Medical and an authorized representative of the Clinic of PA. Susan Andersen also worked for one or more of Defendants as chief operations officer.

Dr. Phyllis P. James ("Dr. James") owned and operated New Castle Family Care, P.A. ("Family Care," and jointly with Dr. James, "Plaintiffs"). In April 2013, Dr. James proposed to sell Family Care to Defendants. On or about July 5, 2013, Mr. Erkan issued a letter of intent (the "LOI") setting forth the terms under which Defendants would acquire Family Care and employ Dr. James.

On July 9, 2013, the parties executed the LOI, which provided: "This document serves as our Letter of Intent and outlines our discussions. The details of this letter will be documented by [Defendants'] attorney in your Employment Agreement and Good Will Agreement pending execution of this letter."[1] In addition to specifying the salary and benefits Dr. James would receive under the

---

[1] Am. Compl. Ex. 2 at 1-2 (the LOI).

employment agreement and the duties she would be expected to undertake, the LOI

listed the following terms:

- Furniture, Computers, Office Equipment[,] and Medical Equipment - $120,000.00 to be paid over three years
- Lease for computers – Balance of payments to be assumed by UMC of DE (see computers above)[.] Lease follows letter.

On August 30, 2013, Dr. James and Ms. Andersen negotiated by email three

outstanding contracts: a billing agreement, an employment agreement, and a good

will agreement.  In the last email exchange of record, Ms. Andersen stated:

> The Billing Agreement . . . is attached. . . . [The] Employment Agreement . . . is attached. . . . The only Agreement we are waiting on is the Good Will Agreement. . . . ***However, the letter of intent which was signed by both parties does cover these items.  The signed letter of intent is equivalent to a written contract***.[2]

On September 5, 2013, Dr. James entered into an employment agreement

with the Clinic of DE,[3] whereby Dr. James agreed to provide medical care to

Defendants' patients on a full-time basis beginning October 1, 2013 (the

"Employment Agreement").  Also on September 5, 2013, Dr. James entered into

---

[2] *Id*. at Ex. 3 at 1.

[3] The amended complaint alleges "Dr. James was employed to provide medical services to subscribers of [the] Clinic of PA who become patients of the Clinic."  Am. Compl. ¶ 7.  I assume this is a typo.  The Employment Agreement is between Dr. James and the Clinic of DE, which is supported by other references to "Dr. James [becoming] an employee of [the Clinic of DE] effective October 1, 2013."  *Id*. at Ex. 8.

an agreement with United Medical whereby United Medical agreed to provide billing services for Family Care's existing accounts receivable beginning October 1, 2013 (the "Billing Agreement").

In the years that followed, the parties' relationship soured for reasons that are neither clear nor relevant for purposes of resolving the pending motion. In June 2016, Plaintiffs filed suit alleging claims for breach of contract, unjust enrichment, conversion and theft, and promissory estoppel based on the Billing Agreement and LOI. Defendants moved to dismiss Plaintiffs' amended complaint for failure to state a claim, and the parties briefed and argued that motion.

## THE PARTIES' CONTENTIONS

Dr. James advances two breach of contract claims in her amended complaint: one arising from the Billing Agreement and one arising from the LOI. She alternatively asserts claims for unjust enrichment, promissory estoppel, and conversion and theft. In addition, Dr. James has brought a promissory estoppel claim based on the storage of patient files at a facility owned by a third party, Iron Mountain.

### 1. The Billing Agreement

Dr. James first alleges Defendants breached the Billing Agreement by failing to "make any payments to reduce plaintiffs' indebtedness."[4] Dr. James contends

---

[4] *Id*. at ¶ 27.

4

Defendants were "contractually obligated to actively pursue the collection of Family Care['s] [accounts receivable]" and "use the proceeds from the collection of the [accounts receivable] . . . to pay plaintiffs' [accounts payable]."[5] Dr. James requests judgment against Defendants "for the full amount of the [accounts receivable] plus accumulated interest and fees."[6]

Alternatively, under a conversion and theft theory, Dr. James alleges Defendants (acting as Family Care's successor) collected money due to Plaintiffs and converted it for Defendants' own use without properly compensating Dr. James.[7] "The specific accounts and amount of funds collected are not presently known, although Dr. James believes that they are substantial."[8] In addition, Plaintiffs allege Defendants took Plaintiffs' tangible assets, such as Family Care's patient files and computers.[9]

In response, Defendants contend Plaintiffs' claim for breach of the Billing Agreement is based on an agreement between Defendants and Family Care, rather than any agreement with Dr. James individually.[10] Defendants assert Family Care

---

[5] *Id*. at ¶¶ 23-24.
[6] *Id*. at ¶¶ 27, 29.
[7] *Id*. at ¶ 43-44.
[8] *Id*. at ¶ 45.
[9] *Id*. at ¶¶ 21, 45.
[10] Defs.' Mot. Dismiss ¶ 18.

cannot maintain a cause of action because it had been void and inoperable for nine years at the time the complaint was filed.[11]

As to Plaintiffs' conversion and theft claim, Defendants argue Plaintiffs' claim is governed by an express written contract, the Employment Agreement, and Plaintiffs therefore are limited to a breach of contract claim unless they can allege Defendants violated a legal duty independent of the contract.[12] Defendants also assert that a conversion action for money damages – such as a claim that "Defendants converted money in the form of accounts receivable" – is unavailable under Delaware law.[13]

## 2. The Letter of Intent

Dr. James also claims Defendants breached the terms of the LOI by failing to pay her $120,000 in exchange for "her practice," which included good will and other tangible property.[14] Dr. James avers that Defendants represented that the LOI was a binding agreement, which Dr. James alleges induced her to enter into the Employment Agreement and Billing Agreement with Defendants.[15]

In the alternative, Dr. James argues that even if the Court concludes the LOI is not a binding agreement, Plaintiffs are entitled to judgment of $120,000 because either (1) Defendants unjustly were enriched when Dr. James transferred all

---

[11] *Id.* (citing 8 *Del. C.* § 510).
[12] Defs.' Mot. Dismiss ¶ 15.
[13] *Id.* at ¶ 16.
[14] Am. Compl. ¶¶ 32-33.
[15] *Id.* at ¶ 31.

Family Care's patient files to Defendants and Defendants "announced to all of Dr. James' patients as well as its own subscribers that is was the successor to Dr. James' practice;"[16] or (2) under a promissory estoppel theory, Defendants induced Dr. James to dissolve her medical practice and took the assets Plaintiffs provided.[17]

Defendants contend the parties did not intend for the LOI to serve as a binding agreement, but merely as an outline of the parties' discussions, the details of which were to be documented in a good will agreement authored by Defendants' attorney. Defendants also contend that the Employment Agreement, containing an integration clause, superseded the LOI.[18] As to Plaintiffs' unjust enrichment and promissory estoppel claims, Defendants assert both claims fail because the subject of those claims "are the subject of an express contract" – either the Employment Agreement or the LOI – and therefore any claim must be brought under contract law.[19]

### 3. Iron Mountain

Finally, Plaintiffs seek "the total amount of fees due to Iron Mountain for the storage fees of patient records."[20] Plaintiffs allege Defendants assumed custody and control of Plaintiffs' records and "undertook the responsibility for the storage"

---

[16] *Id.* at ¶¶ 38-39.
[17] *Id.* at ¶ 48.
[18] Defs.' Mot. Dismiss ¶ 9.
[19] *Id.* at ¶¶ 13-14 (citing *TrueBlue, Inc. v. Leeds Equity P'rs IV, LP*, 2015 WL 5968726, at *5 (Del. Super. Sept. 25, 2015)).
[20] Am. Compl. 10.

of those records.[21] Plaintiffs argue Defendants "engaged, for their own account, the services of Iron Mountain for the safe storage of [P]laintiffs' patient records."[22] According to Dr. James, "Iron Mountain has not been paid storage charges . . . from August 31, 2013 through and including May 30, 2015."[23]

Defendants assert any claim based on Plaintiffs' allegations belongs to Iron Mountain.[24] Defendants argue Plaintiffs have not alleged that Plaintiffs paid Iron Mountain on Defendants' behalf, and therefore Plaintiffs have suffered no injury that arguably would confer standing.[25] Defendants further argue that Plaintiffs have failed to allege: (1) a promise between Plaintiffs and Defendants related to the Iron Mountain storage fees, (2) that Defendants reasonably expected to induce Plaintiffs' action or forbearance, or (3) that Plaintiffs reasonably relied on a promise and acted to their detriment.

**STANDARD**

On a motion to dismiss, the Court must determine whether the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof."[26] "If [the plaintiff] may recover, the motion must be denied."[27] A court

---

[21] *Id*. at ¶¶ 57, 61.
[22] *Id*. at ¶ 62.
[23] *Id*. at ¶ 63.
[24] Defs.' Mot. Dismiss ¶ 19.
[25] *Id*.
[26] *Holmes v. D'Elia*, 129 A.3d 881 (Del. 2015) (citing *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."[28] When applying this standard, the Court will accept as true all non-conclusory, well-pleaded allegations. [29] In addition, "a trial court must draw all reasonable factual inferences in favor of the party opposing the motion."[30]

## ANALYSIS

### A. The breach of contract claim based on the Billing Agreement is dismissed only as to Family Care.

Defendants move to dismiss Count I of the amended complaint on the basis that Family Care, who was party to the contract, is a void entity without standing to bring suit.[31] To establish standing, a plaintiff must show that he or she sustained

---

[27] *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. Feb. 26, 2010) (citing *Parlin v. DynCorp Int'l. Inc.*, 2009 WL 3636756, at *1 (Del. Super. Sept. 30, 2009) (quoting *Spence*, 396 A.2d at 968)), *aff'd*, 8 A.3d 1156 (Del. 2010).

[28] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960) (citing *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 315 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)); *Nero v. Littleton*, 1998 WL 229526, at *3 (Del. Ch. Apr. 30, 1998).

[29] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

[30] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno,* 705 A.2d 1029, 1034 (Del. 1998) (citing *Solomon v. Pathe Commc'ns Corp.,* 672 A.2d 35, 38 (Del. 1996)) (other citations omitted)).

[31] Defendants' motion to dismiss was accompanied by a copy of a certificate from the Delaware Secretary of State declaring Family Care inoperative and void (the "Certificate of Corporate Standing"). Defendants assert "the Court is free to take judicial notice" of this filing because it is "publicly available information that is not subject to reasonable dispute." Defs.' Mot. Dismiss 2 n. 5. Under Delaware law, the Court may take judicial notice of publicly filed documents, such as a Delaware corporation's certification of incorporation, because: (1) "[b]y law it is filed with, and is obtainable by resort to, the office of the Secretary of [the] State of Delaware"; and (2) "[t]hat office is located within the territorial jurisdiction of Delaware and is a source whose accuracy cannot reasonably be questioned." *In re Wheelabrator Techs. Inc. S'holders Litig.*, 1992 WL 212595, at *11 (Del. Ch. Sept. 1, 1992) (citing D.R.E. 201(b)). Because the Certificate of Corporate Standing is a public document filed with the Secretary of the State of Delaware

9

an injury-in-fact and the interest that he or she seeks to protect is within the zone of interests to be protected.[32] Under Delaware law, if a corporation is declared void under 8 *Del. C.* § 510, "all powers conferred by law upon the corporation are declared inoperative."[33] Because the record establishes Family Care was "void" as of March 1, 2007,[34] any statutory period allowing Family Care to bring a suit has expired,[35] and there is no allegation that Family Care received an extension of that period, Count I is dismissed, without prejudice, as to Family Care.[36]

That conclusion does not end the Court's inquiry as to Count I because Dr. James also is named as a party to that claim. The breach of contract claim based on the Billing Agreement sufficiently is pleaded both on behalf of Family Care, as the signatory, and Dr. James, as a third-party beneficiary.[37] Accordingly, Defendants' motion to dismiss Count I as to Dr. James is denied.

---

whose accuracy cannot reasonably be questioned, the Court may consider it without converting the motion to dismiss to a motion for summary judgment.

[32] *Chantz Enters., LLC v. JHL Brighton Design/Décor Ctr., LLC*, 2010 WL 2642885, at *3 (Del. Super. June 30, 2010) (citing *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003)).

[33] 8 *Del. C.* 510.

[34] Hunter Aff. Ex. C.

[35] *See, e.g.*, 8 *Del. C.* 278.

[36] *See id*. The dismissal is without prejudice because Plaintiffs have suggested they may be able to revive Family Care's corporate standing. If Plaintiffs do so in a timely manner, they may file a motion to amend the complaint to reassert this claim.

[37] *Id*. at Ex. 4 at ¶ 22 ("All of the terms and provisions of this Agreement shall inure to the benefit of and be enforceable by the successors and assigns of the parties."). At a minimum, Dr. James is a third-party beneficiary. *See* Am. Compl. Ex. 4 at 2 (the Billing Agreement) ("The net revenues collected by [Plaintiffs] under this Agreement are to be distributed for payment . . . to the existing debts in the name of . . . Phyllis James, M.D."). It may well be that Dr. James is a party to the agreement, as she, along with Family Care, is named as the "Client" in the agreement

**B. The integration clause in the Employment Agreement does not unambiguously supersede the LOI.**

Defendants' motion to dismiss Count II largely depends on whether the Employment Agreement supersedes and subsumes the LOI. Defendants argue the integration clause in the Employment Agreement unambiguously supersedes all other agreements between the parties. The integration clause in the Employment Agreement reads, in pertinent part:

> This Agreement, between the parties, constitutes the entire agreement between the parties hereto with respect to all matters; provided, however, that the terms of employment set forth in any Employment Handbook or other policy of Employer shall remain in effect and be in addition to the terms of this Agreement except to the extent inconsistent herewith in which case the terms of this Agreement shall govern, supersede and prevail.[38]

The issue Defendants raise is one of contractual interpretation. The proper construction of a contract is a question of law for the Court.[39] When interpreting a contract, the Court gives priority to the parties' intentions as reflected in the four corners of the agreement.[40] If the contractual language at issue is clear and

---

and she is listed as a signatory to the agreement, both in her individual capacity and as a representative of Family Care. *Id*. at Ex. 4 at 1, 13.

[38] *Id*. at Ex. 6 at 12 (e) (the Employment Agreement).

[39] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[40] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009) (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) (citing *Radio Corp. of Am. v. Phila. Storage Battery Co.*, 6 A.2d 329 (Del. 1939))); *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

unambiguous, it must be accorded its plain meaning.[41] Ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations."[42] A contract is not ambiguous merely because the parties disagree about its proper construction.[43] Extrinsic evidence "may not be used to interpret the intent of the parties, to vary the terms of the contract[,] or to create an ambiguity," if a contract is unambiguous.[44] On a motion to dismiss, "a trial court cannot choose between two differing reasonable interpretations of ambiguous documents."[45] Where ambiguity exists, "[d]ismissal is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law."[46]

Plaintiffs dispute Defendants' proffered interpretation of the integration clause, arguing its scope is limited to matters of employment and that it was not intended to apply to the parties' non-employment related agreements. Clauses indicating that the contract is an expression of the parties' final intentions generally

---

[41] *Phillips Home Builders v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997).

[42] *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (Del. 1996).

[43] *Rhone-Poulenc*, 616 A.2d at 1196.

[44] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

[45] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) (citing *Barsky v. Flaherty*, C.A. No. 9132 (Del. Ch. Sept. 9, 1987), *reprinted in* 1987 WL 17047 (1988)).

[46] *Vanderbilt*, 691 A.2d at 613 (emphasis in original) (citing *Barsky*, 1987 WL 17047; *Solomon*, 672 A.2d at 38-39); *see also Eisenmann Corp. v. Gen. Motors Corp.*, 2000 WL 140781, at *21 (Del. Super. Jan. 28, 2000) (citing *Norfolk S. Bus Corp. v. Va. Dare Transp. Co.*, 159 F.2d 306, 309 (4th Cir. 1947) ("This Court, in the context of a Motion to Dismiss, will not foreclose the way for the light that reveals the true intention of the transaction, especially if the instrument does not appear to contain the entire agreement between the parties.")).

create a presumption of integration.[47] An integration clause is not irrebuttable, however, because the parties' intent always controls.[48] A court therefore must "consider the facts and circumstances surrounding the execution of the instrument" to discern whether the contract is fully integrated, as Defendants contend, or partially integrated, as Plaintiffs contend.[49] Factors relevant to that consideration include: (i) the parties' intent, to the extent it is discernible, (ii) the language of the contract, including any integration clause, (iii) whether the contract carefully and formally was drafted, (iv) the time the parties had to consider the contract's terms, (v) whether the parties bargained over specific terms, and (vi) whether the contract "addresses questions that naturally arise out of the subject matter."[50] "A contract is

---

[47] *Addy v. Piedmonte*, 2009 WL 707641, at *9 (Del. Ch. Mar. 18, 2009) (citing *Carrow v. Arnold*, 2006 WL 3289582, at *5 (Del. Ch. Oct. 31, 2006), *aff'd*, 933 A.2d 1249 (Del. 2007)).

[48] *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *13 (Del. Ch. Dec. 30, 2010) (citing *Carlson v. Hallinan*, 925 A.2d 506, 522-23 (Del. Ch. 2006)).

[49] *Carrow*, 2006 WL 3289582, at *4 (citing Restatement (Second) § 210 cmt. b ("[A] writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties"); *Johnson v. Reno*, 1996 WL 33658687 (D.D.C. Apr. 17, 1996) (in assessing the intent of the parties, the Court will consider the conduct and language of the parties and the surrounding circumstances); *Nysingh v. Warren*, 488 P.2d 355, 385 (Idaho 1971) ("Whether a particular subject of negotiation is embodied in the writing depends on the intent of the parties, revealed by their conduct and language, and by the surrounding circumstances. Mere existence of a document does not establish integration.")); *see also Addy*, 2009 WL 707641, at *9 (citing E. Allan Farnsworth, II Farnsworth on Contracts § 7.3 at 231 (3d ed. 2004) (internal citations and quotation marks omitted) ("According to Corbin, account should always be taken of all circumstances, including evidence of prior negotiations, since the completeness and exclusivity of the writing cannot be determined except in the light of those circumstances. The writing cannot prove its own completeness and accuracy. The trend clearly favors Corbin. The Restatement Second commentary agrees that a writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties.")).

[50] *Carrow*, 2006 WL 3289582, at *4 (citing *Taylor v. Jones,* 2002 WL 31926612, at *3 (Del. Ch. Dec. 17, 2002) (discussing several of the factors used to determine whether a contract is totally

13

completely integrated if on its face it is clear that the parties intended the writing to be a final and **total** expression of their agreement."[51] Conversely, "[i]f a written agreement is final and incomplete, it is a partially integrated contract."[52]

Defendants' interpretation of the integration clause is reasonable. If, as Plaintiffs contend, the parties intended the clause's scope to be limited to a particular subject matter, it is reasonable to expect that they would have used limiting language, as they did in the integration clause in the Billing Agreement.[53] Here, the integration clause refers to "all matters." In addition, the Employment Agreement's integration clause expressly excludes certain agreements the parties intended to preserve, including the Employment Handbook and other of Defendants' employment policies, which arguably[54] suggests an intent to exclude any non-enumerated agreements.

Defendants' interpretation, however, is not the only reasonable one. Defendants concede that the parties' Billing Agreement, executed on the same day

---

integrated)); *see also Addy*, 2009 WL 707641, at *9 (citing *Hynansky v. Vietri,* 2003 WL 21976031, at *3 (Del. Ch. Aug. 7, 2003) (citation omitted)).

[51] *Taylor*, 2002 WL 31926612, at *3 (emphasis added) (citing *McGrew v. Vanguard Corp.*, 1979 WL 4635, at *3 (Del. Ch. Sept. 25, 1979)).

[52] *Id.*

[53] Am. Compl. Ex. 4 at 20 (the Billing Agreement) (emphasis added):
> This Agreement supersedes all prior agreements and sets forth the entire understanding among the parties hereto *with respect to the subject matter hereof* and cannot be changed, modified extended or terminated except upon written amendment executed by both parties.

[54] As will be seen, this language also may be read to support Plaintiffs' position.

as the Employment Agreement, remains a binding agreement between the parties.[55]

Under Defendants' broad interpretation of the Employment Agreement's integration clause, however, the Billing Agreement also would be superseded.[56] That, coupled with the language in the Employment Agreement's integration clause preserving certain employment-related policies, supports Plaintiffs' argument that the parties intended to limit the scope of the integration clause to employment matters.

These discrepancies and internal inconsistencies contradict the notion that the Employment Agreement carefully was drafted.[57] Moreover, I reasonably can infer the parties intended to have separate agreements governing various parts of the transaction. The other facts and circumstances relevant to determining whether the Employment Agreement is fully or partially integrated require further development of the record. For all the foregoing reasons, I conclude the scope of the Employment Agreement's integration clause is ambiguous and the LOI

---

[55] The parties agree the Billing Agreement is not extrinsic evidence, as it forms part of the agreement between the parties.

[56] Defendants argue that the Employment Agreement has an effective date that is later than the date the agreements were signed and that the Billing Agreement has no such "effective date," and, therefore, any ambiguity created by the existence of the Billing Agreement is eliminated. I do not find this argument persuasive. Both the Employment Agreement and the Services Agreement were signed on the same day, September 5, 2013. The Billing Agreement has an "Effective Date" of October 1, 2013, and the Employment Agreement has a "Commencement Date" of October 1, 2013.

[57] *Addy*, 2009 WL 707641, at *9 ("[D]iscrepancies and internal inconsistences contradict the notion that the [agreement was] carefully drafted.").

15

therefore may remain an enforceable agreement between the parties. Accordingly, Defendants' motion to dismiss Count II is denied.

### C. The Plaintiffs may plead alternative, quasi-contract claims.

"Courts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract, and, similar to promissory estoppel, [a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."[58] Thus, "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . , a claim for unjust enrichment will be dismissed."[59]

Defendants argue that a contract governs all aspects of their relationship with Plaintiffs, and therefore, the claim for unjust enrichment must be dismissed. Defendants also, however, dispute whether the LOI is an enforceable contract. If this Court ultimately adopts Defendants' argument that the Employment Agreement and Billing Agreement constitute the complete agreement between the parties, it reasonably is conceivable that the facts alleged in the amended complaint would support a finding of unjust enrichment based on the relationships among

---

[58] *Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2013 WL 5210255, at *11 (Del. Super. Sept. 4, 2013) (citing *Kuroda v. SPJS Hldgs. L.L.C.*, 971 A.2d 872, 891 (Del. Ch. Apr. 15, 2009); *ID Biomedical Corp.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995)); *see also Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) ("Because the contract is the measure of plaintiffs' right, there can be no recovery under an unjust enrichment theory independent of it.").
[59] *Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006).

Defendants and their various interactions with Dr. James. For example, Dr. James alleges Defendants improperly acted as the successor to Dr. James' practice without paying the agreed-upon purchase price. If this occurred, and the parties' relationship was not governed by an express contract, Defendants could be susceptible to a claim for unjust enrichment.[60] Thus, Dr. James properly has stated a claim, in the alternative, for unjust enrichment, and Defendants' motion to dismiss Count III is denied.

A party likewise may plead promissory estoppel in the alternative to a contract claim. A plaintiff asserting a claim for promissory estoppel must plead facts alleging: (1) a promise was made; (2) the promisor reasonably expected to induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise and took action to his detriment; and (4) the promise binds the parties because injustice can be avoided only by its enforcement.[61] Promissory

---

[60] *See Addy*, 2009 WL 707641, at *22 ("The reason is that the interrelatedness of the Moving Defendants with the other Defendants and of the several agreements different Defendants had with [the plaintiff] makes it impossible in the context of a Rule 12(b)(6) motion to dismiss to say that [the plaintiff] could not conceivably be entitled to some form of quasi-contractual or other equitable relief.").

[61] *Chrysler Corp. (Del.) v. Chaplake Hldgs., Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

estoppel requires a "real promise," that is "reasonably definite and certain,"[62] not just mere expressions of expectation, opinion, or assumption.[63]

Plaintiffs have alleged sufficient facts to overcome a motion to dismiss the promissory estoppel claim. Based on the record before me, and drawing all inferences in Plaintiffs' favor, I find that Dr. James could show the existence of a promise or promises made by one or more of Defendants upon which she reasonably relied.[64] "Determining whether the other elements for promissory estoppel are met will require a fact intensive inquiry into the details of the parties' dealings."[65] "Those issues cannot be resolved on a motion to dismiss."[66] Defendants' motion to dismiss Count V therefore is denied.

## D. Plaintiffs adequately allege a claim for conversion and theft.

Defendants also moved to dismiss Count IV of the amended complaint alleging conversion and theft. Defendants argue that since Plaintiffs' claim is the subject of an express contract, Plaintiffs must sue in contract. Defendants also argue there is no conversion action for money damages available in Delaware.

---

[62] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1233 (Del. Ch. 2000) (citing *State v. Simpson*, 1990 WL 143837, at *7 (Del. Ch. Sept. 24, 1990) ("An essential element of promissory estoppel is that the promisor's representation must be reasonably definite and certain so that the intentions of the parties can be ascertained.")).

[63] *Addy*, 2009 WL 707641, at *22-23 (citing *Metro. Convoy Corp. v. Chrysler Corp.*, 208 A.2d 519, 521 (Del. 1965)).

[64] *Addy*, 2009 WL 707641, at *22-23.

[65] *Id.*; *Alltrista Plastics*, 2013 WL 5210255, at *10.

[66] *Addy*, 2009 WL 707641, at *22-23 (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 74 (2d Cir. 1989)).

Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it."[67] "Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort."[68] To assert a conversion claim alongside a contract claim, the plaintiff must "allege[] the defendant breached a tort duty independent of any obligations imposed by the contract."[69]

Any claim for conversion related to accounts receivable arises out of the Billing Agreement, and Plaintiffs therefore are limited to a contract claim for those damages. The motion to dismiss Count IV as to the alleged conversion of the accounts receivable therefore is granted. Based on a fair reading of the amended complaint, Plaintiffs' conversion and theft claim may extend beyond accounts

---

[67] *Drug, Inc. v. Hunt,* 168 A. 87, 93 (Del. 1933).
[68] *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007) (citing *Pinkert v. John J. Olivieri, P.A.,* 2001 WL 641737, at *5 (D. Del. May 21, 2001); *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.,* 2005 WL 445710, at *3 (Del. Super. Feb. 23, 2005); *Garber v. Whittaker,* 174 A. 34, 36 (Del. Super. 1934) ( "As a general rule . . . where the action is based entirely on a breach of the terms of a contract between the parties . . . an action on the case will not lie, and the plaintiff must sue, if at all, in contract."))
[69] *Saraga*, 2007 WL 2142848, at *3 (citing *Textainer Equip. Mgmt. Ltd. v. TRS Inc.,* 2007 WL 1795695, at *2-3 (N.D. Cal. June 20, 2007) (finding the plaintiff stated claims for breach of contract and conversion where the plaintiff alleged the defendant violated both contractual obligation and an independent duty to refrain from converting the plaintiff's property); *H.J. Keith Co. v. Booth Fisheries Co.,* 87 A. 715, 718-19 (Del. Super. 1913); 18 Am. Jur. 2d *Conversion* § 67); *see also Kuroda*, 971 A.2d at 889.

receivable to include alleged conversion of Family Care's tangible assets.[70] As to a claim related to those assets, Defendants' motion to dismiss is denied.

### E. Plaintiffs' Iron Mountain claim does not survive.

Plaintiffs' promissory estoppel claim as to the Iron Mountain storage fees apparently arises out of Iron Mountain threatening litigation against Dr. James.[71] Plaintiffs acknowledged during oral argument, however, that nothing in the amended complaint alleges that Plaintiffs are parties to the Iron Mountain agreement, that Iron Mountain is threatening litigation, that Plaintiffs owe fees to Iron Mountain, or that Plaintiffs suffered any injury. Plaintiffs also have failed to allege that Defendants made any promise relating to the Iron Mountain storage fees, or that Plaintiffs relied on such a promise. Defendants' motion to dismiss Count VI therefore is granted.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED in part and without prejudice** as to Count I; is **DENIED** as to Counts II, III, and V; is **GRANTED in part** as to Count IV; and is **GRANTED** as to Count VI.

---

[70] Am. Compl. ¶¶ 21, 45.
[71] This argument was raised for the first time at oral argument.

20